Joseph F. Postnikoff
State Bar No. 16168320
Email: jpostnikoff@romclaw.com
ROCHELLE MCCULLOUGH, LLP
300 Throckmorton Street, Suite 520
Fort Worth, Texas 76102
Telephone – 817.347.5260
http://www.romclaw.com

COUNSEL FOR DEBTORS IN POSSESSSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Primal Materials, LLC, and | § | Case No. 24-10217-RLJ11 |
| Primal Crushing, LLC, | § | Case No. 24-10218-RLJ11 |
| | § | |
| Debtors. | § | Jointly Administered Under |
| | § | Case No: 24-10217-RLJ11 |

**ORIGINAL JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY
PRIMAL MATERIALS, LLC AND PRIMAL CRUSHING, LLC, THE DEBTORS AND
DEBTORS IN POSSESSION**

Primal Materials, LLC ("Primal Materials") and Primal Crushing, LLC ("Primal Crushing"), the Debtors in Possession in the above styled and numbered Chapter 11 bankruptcy cases (hereinafter, the "Debtors"), hereby file this *Original Joint Chapter 11 Plan of Reorganization Proposed by the Debtors and Debtors in Possession* (the "Plan") under Chapter 11 of the Bankruptcy Code. On December 12, 2024, Debtors filed voluntary petitions for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the Northern District of Texas, Abilene Division.

**SUMMARY OF PLAN**

The Plan provides for the substantive consolidation of Primal Materials and Primal Crushing with Primal Materials emerging from bankruptcy as the Reorganized Debtor. This Plan is provided to all known Creditors and parties in interest pursuant to the Bankruptcy Code. Under the Plan, the Reorganized Debtor will pay in full Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims. Debtor will make payments to Creditors holding Allowed General Unsecured Claims over a period of thirty-

six (36) months in quarterly distributions of a fixed amount proposed herein or, alternatively, of Disposable Income available to the Debtor. The details of the Plan as to classification and treatment of Claims are set out in Articles III and IV of the Plan.

If this Plan is not approved on a consensual basis by the Bankruptcy Court under section 1191(a) of the Bankruptcy Code, then Debtors will move to confirm this plan on a nonconsensual basis under section 1191(b) of the Bankruptcy Code. If Debtors fail to confirm either a consensual or a nonconsensual plan, the most likely alternative is conversion of this case to Chapter 7. If Debtors' cases are converted to Chapter 7, then secured creditors' recovery will be limited to the value of their collateral and Debtors' unsecured creditors would be limited to the liquidation value of non-exempt unencumbered property of the Estate.

The primary value of the Debtors' Estates is associated with the Debtors' rock crushing and loading equipment as well as accounts receivable. The Debtors believe that while the liquidation value of the personal property of the estates is significant, the vast majority of that value would be consumed by the Claims of Secured Creditors and Administrative Expenses in a chapter 7 liquidation. The second alternative to confirmation is dismissal of the Bankruptcy Cases. In the judgment of the Debtors, dismissal of the reorganization proceedings would lead to a highly unsatisfactory result. Numerous lawsuits would necessarily be filed by creditors attempting to collect debt owed to them. Such litigation would ultimately result in a disorganized and inefficient liquidation of the assets of the Debtors.

The Liquidation Analysis and Plan Projections attached to this Plan as **Addendum A** and **Addendum B**, respectively, together with an analysis of Claims of Unsecured Creditors which shall be filed as a supplemental addendum shall constitute Plan Documents as contemplated in section 1.3. of the Plan.

## ARTICLE I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

### 1.1. <u>Definitions</u>.

All capitalized terms not otherwise defined in the Plan shall have the meanings ascribed to them in the Definitions Section of the Plan (the "Definitions of Terms, Article XV"). Any capitalized term used in the Plan that is not defined in either the Definitions or elsewhere in the Plan shall have the meaning ascribed to the term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### 1.2. <u>Rules of Interpretation and Construction</u>.

For purposes of the Plan, (i) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references in the Plan to articles and exhibits are references to articles or exhibits in the Plan; (iii) the words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan in its entirety and not to any

particular portion of the Plan; (iv) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (v) wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; and (vi) the rules of construction outlined in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the Plan.

1.3.    All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Certain Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Rochelle McCullough, LLP, 300 Throckmorton Street, Suite 520, Fort Worth, Texas 76102, Attention: Michelle Wilson; email: MWilson@romclaw.com

## ARTICLE II.

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1.    **Unclassified Claims**.

Under Section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

2.2.    **Administrative Expense Claims**.

Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the Effective Date of this Plan by the Debtors, but only to the extent of Debtors liability, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.  **NOTE: This treatment may be materially altered in the event of confirmation pursuant to § 1191(b) as to claims arising under §§ 507(a)(2) and (3) as noted in section 5.5 of this Plan.**

2.3.    **Priority Tax Claims**.

Each holder of an Allowed Priority Tax Claim against the Debtors shall receive on the Effective Date, in full satisfaction, release and discharge of such Allowed Priority Tax Claim, at the election of the Debtors, either: (i) Cash payment in the amount of such holder's Allowed Priority Tax Claim; (ii) deferred Cash payments over a period not to exceed five (5) years, from the Petition Date of a value as of the Effective Date, equal to the Allowed amount of such Claim; or (iii) such other terms as may be agreed upon by such holder and the liable Debtor.

Except as otherwise provided herein and with respect to the Internal Revenue Service, the rate of interest to be paid on Allowed Priority Tax Claims that are paid out over five (5) years shall

be equal to the underpayment rate specified in 26 U.S.C. § 6621 (determined without regard to 26 U.S.C. § 6621(a)) as of the Effective Date (the underpayment rate is currently 5.0%).

Except as otherwise provided herein and with respect to the Texas Comptroller of Public Accounts, the rate of interest to be paid on Allowed Priority Tax Claims that are paid over five (5) years is 8.5% in accordance with Texas Tax Code 111.060(b).

For Primal Materials, the Internal Revenue Service has filed a Proof of Claim for estimated taxes for which Priority treatment is claimed pursuant to 11 U.S.C. § 507(a)(8) in the amount of $15,016.57. The Texas Comptroller of Public Accounts has filed Proofs of Claim for estimated franchise taxes as well as sales and use taxes for which Priority treatment is claimed pursuant to 11 U.S.C. § 507(a)(8) in the amount of $3,442.61. Primal Materials is in the process of becoming current on the outstanding returns in order that the estimated liabilities may be determined.

For Primal Crushing, neither the Internal Revenue Service nor the Texas Comptroller of Public Accounts has filed a Proof of Claim. It should be noted the Proof of Claim Bar Date for a governmental unit is June 10, 2025. Insofar as there may be outstanding returns to be filed, Primal Crushing is in the process of becoming current on the outstanding returns in order that the liabilities, if any, may be determined.

2.4.    **Agreement Concerning Claim of the Internal Revenue Service**:

Except as otherwise ordered by this Court, the Internal Revenue Service shall have an Allowed Priority Tax Claim in the amount of $15,016.57 and an Allowed Administrative Claim to be determined. The Allowed Combined Claim shall be paid in full, with 8.0% interest per annum, amortized over a 36-month period and paid in monthly installments, commencing on the effective date and continuing on the same day of each month thereafter until the Allowed Combined Claim is paid in full.  Reorganized Debtor shall have the right to prepay this claim at any time after the Effective Date without incurring prepayment penalties or interest.

All federal tax payments under the Plan shall be paid to the Internal Revenue Service, by mail to:

> Internal Revenue Service
> MC 5027 DAL
> 1100 Commerce St.
> Dallas, TX  75242

Payments that are mailed in shall be made by check or money order made payable to the United States Treasury and should be identified with the Debtors' bankruptcy case number CH11 #23-10081. Payments shall be deemed made on the date of receipt by the Internal Revenue Service.

The running of the statute of limitations on collection is agreed to be stayed during the period the Reorganized Debtor is permitted to make payments under this Plan.

The Reorganized Debtor shall remain current with all of its post-confirmation federal tax obligations, including making deposits and payments and filing all returns, during the period the

Reorganized Debtor is required to make payments under this Plan. A failure to make post-confirmation tax deposits, payments, and filings in a timely fashion, as required by the Internal Revenue Code, shall be deemed a material default under the terms of the Plan. The Reorganized Debtor shall be allowed a fifteen-day grace period with respect to the timeliness of these obligations before being deemed a default of the Plan. Said grace period shall not be applicable with respect to the Reorganized Debtor being found liable for penalties and interest as determined by the Internal Revenue Code.

In the event of default, the Internal Revenue Service shall give written or telephonic notice to the Reorganized Debtor and the shall have fifteen days from the notice date to cure or otherwise establish there has been no default. In the event the default is not cured, the Internal Revenue Service shall have the option, at its discretion, to accelerate the entire indebtedness due to the Internal Revenue Service under the Plan or take any other collection action authorized by law with respect to the unpaid Allowed Priority Claim.

2.5.    **Statutory Fee**.

As a case under Subchapter V of Chapter 11 of the Bankruptcy Code, no fees are required to be paid under 28 U.S.C. § 1930.

2.6.    **EXCEPTION: Payment of Administrative Expense Claims Through Plan Term**.

If the Plan is confirmed pursuant to § 1191(b) any and all claims of a kind specified in paragraph (2) or (3) of § 507(a) of the Bankruptcy Code may be paid the Allowed amount of such claim in semi-annual installments during the Plan Term commencing on the Effective Date or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1.    **Claims and Interests Classified**.

Pursuant to §1122 of the Bankruptcy Code, except as otherwise provided herein, all Claims (except for Administrative Claims and Priority Tax Claims) and all Interests shall be classified as set forth in this Article III of the Plan. The classification of Claims and Interests in Article III of the Plan gives effect to the priority scheme generally adopted by the Bankruptcy Code. In accordance with §1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified under the Plan, and the treatment of those Claims is set forth in Article II of the Plan.

3.2.    **Claims and Interests**.

The following is a designation of the classes of Claims and Interests under the Plan. A Claim shall be deemed classified in a particular class only to the extent that the Claim qualifies

within the description of that class. A Claim is in a particular class only to the extent that the Claim is an Allowed Claim in that class.

The following Class designations shall apply with respect to Primal Materials:

<u>Class 1</u> — Non-Tax Priority Unsecured Claims.

<u>Class 2</u> — Secured Claims of Ad Valorem Tax Authorities.

<u>Class 3</u> — Secured Claim of ALJR Ventures, LLC.

<u>Class 4</u> — Secured Claim of Fundthrough USA, Inc.

<u>Class 5</u> — General Unsecured Claims.

<u>Class 6</u> — Interests.

The following Class designations shall apply with respect to Primal Crushing:

<u>Class 7</u> — Non-Tax Priority Unsecured Claims.

<u>Class 8</u> — Secured Claims of Ad Valorem Tax Authorities.

<u>Class 9</u> — Secured Claim of Fundthrough USA, Inc.

<u>Class 10</u> — Secured Claim of ALJR Ventures, LLC.

<u>Class 11</u> — Secured Claims of Komatsu Financial Limited Partnership.

<u>Class 12</u> — General Unsecured Claims.

<u>Class 13</u> — Interests.

3.3. **Classes Entitled to Vote**.

**ONLY THE IMPAIRED CREDITORS ARE BEING SOLICITED
TO VOTE TO ACCEPT OR REJECT THE PLAN.**

Classes 2 through 5 and 8 through 13 are impaired under the Plan and Classes 2 through 5 and 8 through 12 are entitled to vote on the Plan. Classes 1, 6 and 7 are unimpaired under the Plan and Classes 6 and 13 are Insiders and, therefore, not entitled to vote on the Plan.

Debtors specifically reserve the right to contest whether any ballots cast should be allowed to be counted for purposes of Confirmation. In addition, a vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith, in accordance with the provisions of the Bankruptcy Code.

### 3.4.  **Impairment Controversies**.

If a controversy arises as to whether any Claim or Interest or any Class of Claims or Class of Interests is impaired under the Plan, the Bankruptcy Court shall, upon notice and a hearing, determine such controversy.

## ARTICLE IV.

## PROVISIONS FOR TREATMENT OF CLAIMS
## AND INTERESTS UNDER THE PLAN

**Preface to Treatment of Classes of Claims and Interests of Primal Materials**.

The Classes of Claims against and Interests in Primal Materials shall be treated under the Plan as set forth below.

### 4.1.  **Class 1 — Non-Tax Priority Unsecured Claims**.

Description: Class 1 consists of all Non-Tax Priority Unsecured Claims asserted against Primal Materials. It is believed there are no Holders of Class 1 Claims.

Treatment:  All Allowed Non-Tax Priority Unsecured Claims, if any, shall be paid the Allowed amount of such Claim without interest as payment in full on the Effective Date.

Class 1 is unimpaired and is not allowed to vote on the Plan.


### 4.2.  **Class 2 — Secured Claims of Ad Valorem Tax Authorities**.

Description:  Class 2 consists of Secured Claims of Ad Valorem Tax Authorities asserted against Primal Materials.

Treatment:  Each holder of a Class 2 Allowed Secured Claim payable to a taxing authority for ad valorem taxes for tax years 2024 and prior shall be paid in full, with statutory interest on such Allowed Secured Claims under 11 U.S.C. § 506(b), to the extent applicable, at the rate of one percent (1%) per month in twelve equal monthly installments of principal and interest, the first of which shall be due and owing on or before the Initial Distribution Date.

Each holder of a Class 2 Allowed Secured Claim payable to a taxing authority for ad valorem taxes from tax year 2025 and thereafter shall be paid in the ordinary course of business as and when due. Each holder of a Class 2 Allowed Secured Claim shall retain its Liens to the extent of its Claim until its Claim has been paid in full.

Class 2 is impaired and entitled to vote on the Plan.

4.3. **Class 3 — Secured Claim of ALJR Ventures, LLC**.

Description: Class 3 consists of the Secured Claim of ALJR Ventures, LLC ("ALJR") asserted against Primal Materials. Pursuant to Proof of Claim No. 5 filed February 20, 2025, ALJR asserts a Claim of $430,807.54 (the "ALJR Materials Secured Claim") Secured by a first in priority UCC-1 Lien (the "ALJR Materials Lien") against the untitled personal property of Primal Materials. Pursuant to the Cash Collateral Order, Primal Materials has made a series of monthly adequate protection payments to ALJR in the amount of $10,000.00 since January 1, 2025. Additionally, ALJR asserts an Unsecured Claim of $330,608.40.

Treatment: The Plan provides for the following treatment of the Class 3 Secured Claim of ALJR:

    a. The Allowed Secured Claim of ALJR shall be satisfied in sixty equal monthly installment payments of principal and interest, which interest shall accrue from the Effective Date of the Plan at the contract rate of interest, with the first monthly installment payment due on or before the Initial Distribution Date;

    b. If ALJR is determined, by agreement of parties or order of this Court, to be over-secured, the adequate protection payments shall be applied to interest and/or costs of collection as may be allowed by this Court;

    c. If ALJR is determined, by agreement of the parties or order of this Court, to be under-secured, the adequate protection payments shall be applied to the Allowed Secured Claim of ALJR and any unsecured portion of the ALJR Materials Claim shall be allowed and treated as a Class 6 Unsecured Claim;

    d. Any pre-petition default by the Debtor shall be waived; and

    e. ALJR shall retain the ALJR Materials Lien against the ALJR Materials Collateral until its Allowed Claim has been satisfied in full. Nothing contained herein shall disturb the priority of liens asserted by ALJR and Fundthrough USA in assets of Primal Materials and/or Primal Crushing.

Class 3 is impaired and is allowed to vote on the Plan.

4.4. **Class 4 — Secured Claim of Fundthrough USA, Inc.**

Description: Class 4 consists of the Secured Claim of Fundthrough USA, Inc. ("Fundthrough USA") asserted against Primal Materials. Pursuant to Proof of Claim No. 2 filed January 7, 2025 (the "Fundthrough USA Claim"), Fundthrough USA asserts a Lien against certain assets of Primal Materials to collateralize an obligation owed Fundthrough USA by Primal Crushing in the amount of $169,363.92. Pursuant to the Cash Collateral Order, Primal Materials has made a series of monthly adequate protection payments to Fundthrough USA in the amount of $1,500.00 since January 1, 2025.

Treatment: Consistent with the treatment accorded Fundthrough USA in Class 9 of this Plan, Primal Materials shall assume the payment obligation for the Fundthrough USA Claim on the following terms:

  a. The Allowed Secured Claim of Fundthrough USA shall be satisfied in thirty-six equal monthly installment payments of principal and interest, which interest shall accrue from the Effective Date of the Plan at the contract rate of interest, with the first monthly installment payment due on or before the Initial Distribution Date;

  b. If Fundthrough USA is determined, by agreement of parties or order of this Court, to be over-secured, the adequate protection payments shall be applied to interest and/or costs of collection as may be allowed by this Court;

  c. Any pre-petition default by the Debtor shall be waived; and

  d. Fundthrough shall retain the its lien against the Fundthrough USA Collateral until its Allowed Claim has been satisfied in full. Nothing contained herein shall disturb the priority of liens asserted by ALJR and Fundthrough USA in assets of Primal Materials and/or Primal Crushing.

Class 4 is impaired and is allowed to vote on the Plan.

4.5.   **Class 5 — General Unsecured Claims**.

Description: Class 5 consists of Allowed Claims against Primal Materials (including Claims arising from the rejection of executory contracts and/or unexpired leases) other than: (i) Administrative Claims; (ii) Priority Tax Claims; or (iii) Claims included within any other Class designated in this Plan. Class 6 shall be deemed to include those Creditor(s) holding an alleged Secured Claim against Primal Materials for which: (y) no collateral exists to secure the alleged Secured Claim; and/or (z) liens, security interests, or other encumbrances that are senior in priority to the alleged Secured Claim exceed the fair market value of the collateral securing such alleged Secured Claims as of the Petition Date.

Treatment: Each holder of an Allowed Unsecured Claim in Class 5 shall be paid by the Reorganized Debtor as follows in full satisfaction of such creditor's claim: holders of an allowed Class 5 (as well as other Classes of Claims deemed to be a member of Class 5) shall receive their pro-rata share of payments of a fixed amount from a common fund (the "Unsecured Creditor Pool"), for thirty-six (36) months or, alternatively, of Disposable Income available to Primal Materials as described in greater detail in Paragraph 8.5 herein, in payment of this Claim.

Payments from the Unsecured Creditor Pool to holders of allowed Class 5 Claims shall be accrued and paid quarterly, for a period not to exceed three (3) years. The first of twelve (12) quarterly Disposable Income Payments shall be made on the first day of the third month following the Effective Date and every three months thereafter

No Holder of a Class 5 Claim shall receive more than 100% of their Allowed Claim. A Holder of both a Class 5 Claim and a Class 12 Claim which is based on the same underlying obligation, shall be entitled to a single recovery pursuant to this Class 5 of the Plan. A Holder of a Class 5 or Class 12 Claim shall not be entitled to payment of interest on its Allowed Claim.

Class 5 is impaired and entitled to vote on the Plan.

4.6. **Class 6 — Interests**.

Description:  Class 6 consists of the Holder of Allowed Interests of Primal Materials.

Treatment: The Holder of the Allowed Class 6 Interests shall retain his interests in the Reorganized Debtor.

Class 6 is unimpaired. The holder is not entitled to vote on the Plan.

**Preface to Treatment of Classes of Claims and Interests of Primal Crushing.**

The Classes of Claims against and Interest in Primal Crushing shall be treated under the Plan as set forth below.

4.7. **Class 7 — Non-Tax Priority Unsecured Claims**.

Description:  Class 7 consists of all Non-Tax Priority Unsecured Claims asserted against Primal Crushing. It is believed there are no Holders of Class 7 Claims.

Treatment: Allowed Class 7 Claims, if any, shall be assumed by the Reorganized Debtor and paid as a Class 1 Claim.

Class 7 is unimpaired and is not allowed to vote on the Plan.

4.8. **Class 8 — Secured Claims of Ad Valorem Tax Authorities**.

Description:  Class 8 consists of Secured Claims of Ad Valorem Tax Authorities asserted against Primal Crushing.

Treatment:   Allowed Class 8 Claims shall be assumed by the Reorganized Debtor and paid as a Class 2 Claim.

Class 8 is impaired and entitled to vote on the Plan.

4.9. **Class 9 — Secured Claims of Fundthrough USA**.

Description:  Class 9 consists of the Secured Claim of Fundthrough USA, Inc. ("Fundthrough USA") asserted against Primal Materials. Pursuant to Proof of Claim No. 1 filed January 7, 2025 (the "Fundthrough USA Claim"), Fundthrough USA asserts a Lien against certain

assets of Primal Crushing (the "Fundthrough USA Collateral") to collateralize an obligation in the amount of $169,363.92. Pursuant to the Cash Collateral Order, Primal Materials has made a series of monthly adequate protection payments to Fundthrough USA in the amount of $1,500.00 since January 1, 2025.

Treatment: The Allowed Class 9 Claim shall be assumed by the Reorganized Debtor and paid consistent with the treatment set forth in Class 4 of the Plan.

Class 9 is impaired and entitled to vote on the Plan.

4.10. **Class 10 — Secured Claim of ALJR**.

Description: Class 10 consists of the Secured Claim of ALJR Ventures, LLC ("ALJR") asserted against Primal Crushing. Pursuant to Proof of Claim No. 6 filed February 20, 2025, ALJR asserts a Claim of $761,415.94 (the "ALJR Crushing Secured Claim") Secured by a first in priority UCC-1 Lien (the "ALJR Crushing Lien") against the untitled personal property of Primal Crushing. Pursuant to the Cash Collateral Order, Primal Materials has made a series of monthly adequate protection payments to ALJR in the amount of $10,000.00 since January 1, 2025.

Treatment: The Allowed Class 10 Claim shall be satisfied by the Reorganized Debtor consistent with the treatment set forth in Class 3 of the Plan.

Class 10 is impaired and is allowed to vote on the Plan.

4.11. **Class 11 — Secured Claims of Komatsu Financial Limited Partnership**.

Description: Class 11 consists of the Claims Komatsu Financial Limited Partnership ("Komatsu") which are asserted by Komatsu to have been no less than $660,984.77 (the "Komatsu Claim") as of the Petition Date Secured by purchase money liens against certain equipment of Primal Crushing (the "Komatsu Collateral") as follows:

| Contract 001 | One (1) Kleeman MR 130 ZSI Crusher (S/N K0780051) | $340,640.97 |
| Contract 002 | One (1) Kleeman MR 130 Zi EVO Crusher (S/N K078.0047) | $320,343.80 |

Treatment: The Plan provides for the following treatment of the Allowed Class 12 Secured Claims of Komatsu:

    a.  The Komatsu Claim shall be assumed and satisfied by Primal Materials;

    b.  Komatsu shall continue to receive monthly installment payments in accordance with its contracts on account of the Komatsu Claim;

c. Komatsu shall waive any and all pre-petition defaults and any prepetition arrearage due and owing Komatsu shall be added to the final installment payment due under the applicable purchase money instrument; and

d. Komatsu shall retain its Lien against the Komatsu Collateral to the extent of its Allowed Secured Claim until its Allowed Secured Claim has been paid in full.

4.13. **Class 12 — General Unsecured Claims**.

Description: Class 12 consists of Allowed Claims against Primal Crushing (including Claims arising from the rejection of executory contracts and/or unexpired leases) other than: (i) Administrative Claims; (ii) Priority Tax Claims; or (iii) Claims included within any other Class designated in this Plan. Class 13 shall be deemed to include those Creditor(s) holding an alleged Secured Claim against Primal Crushing for which: (y) no collateral exists to secure the alleged Secured Claim; and/or (z) liens, security interests, or other encumbrances that are senior in priority to the alleged Secured Claim exceed the fair market value of the collateral securing such alleged Secured Claims as of the Petition Date.

Treatment: All Allowed Class 12 Claims shall be assumed by the Reorganized Debtor and paid pursuant to the terms of Class 5 of the Plan.

Class 12 is impaired and entitled to vote on the Plan.

4.13. **Class 13 — Interests**.

Description: Class 13 consists of the Holders of Allowed Interests of Primal Crushing.

Treatment: The interests of Holders of Allowed Class 13 Interests shall be cancelled as of the Effective Date.

Class 13 is impaired. The Holders are not entitled to vote on the Plan.

## ARTICLE V.

## ACCEPTANCE OR REJECTION OF PLAN

5.1. **Classes Entitled to Vote**.

Each impaired class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan. Any Unimpaired Class of Claims or Interests as defined herein shall not be entitled to vote to accept or reject the Plan. A Subchapter V Chapter 11 Plan does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

5.2. **Class Acceptance Requirement**.

A Class of Claims or Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Interests in such Class that have voted on the Plan.

5.3. **Effect of Confirmation**.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

5.4. **Voting**.

For all Classes, the ballot must be returned to Joseph F. Postnikoff, 300 Throckmorton Street, Suite 520, Fort Worth, Texas 76102. In order to be counted, ballots must be RECEIVED no later than at the time and on the date stated on the ballot.

## ARTICLE VI.

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.1. **Claims Listed in Schedules as Disputed**.

Any Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

6.2. **Responsibility for Objecting to Claims and Settlement of Claims**.

Reorganized Debtor, in consultation with the Subchapter V Trustee, will bring objections to claims and shall have authority to settle and compromise any Objection to any Claim, including as follows:

(a)     From and after the Effective Date, Reorganized Debtor, in consultation with the Subchapter V Trustee, shall have the right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by Reorganized Debtor; and

(b)     From and after the Effective Date, Reorganized Debtor, in consultation with the Subchapter V Trustee, shall have the right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

6.3. **Objection Deadline**.

All Objections to Claims shall be served and filed by the Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. Reorganized Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline. Any such motion may be granted without notice or a hearing. In the event that Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by Reorganized Debtor. Nothing contained herein shall limit the right of Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

### 6.4. **Response to Claim Objection**.

If Reorganized Debtor files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.

### 6.5 **Distributions on Account of Contested Claims**.

If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

### 6.6. **No Waiver of Right to Object**.

Except as expressly provided in this Plan, nothing contained in this Plan or the Confirmation Order shall waive, relinquish, release or impair Reorganized Debtor's right to object to any Claim.

### 6.7. **Offsets and Defenses**.

Reorganized Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any

Claimant holding a Claim. Assertion of counterclaims by Reorganized Debtor against any Claim asserted against the Estate or Reorganized Debtor shall constitute "core" proceeding.

### 6.8. **Claims Paid or Reduced Prior to Effective Date**.

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude Reorganized Debtor from paying Claims that Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE VII.

## EXECUTORY CONTRACTS

### 7.1 **Assumed Executory Contracts and Unexpired Leases**.

No less than twenty-one (21) days prior to the hearing on Confirmation of this Plan, the Debtors shall file with the Bankruptcy Court a list of executory contracts and/or unexpired leases to be assumed effective upon the Effective Date of the Plan. The Debtors will be conclusively deemed to have rejected all other executory contracts and/or unexpired leases not expressly assumed under this section 7.1, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **thirty (30)** days after the Effective Date.

### 7.2 **Cure Claim Payments**.

To the extent any Cure Claims exist for any Executory Contracts or Unexpired Leases to be assumed hereunder, they shall be treated as provided in this section. Unless the holder of a Cure Claim and Debtors or Reorganized Debtor agree in writing to other treatment of such holder's Cure Claim, or other treatment of such holder's Cure Claim is otherwise provided for under the Plan, any cure payment which may be required by section 365(b)(1) of the Bankruptcy Code under an Executory Contract or Unexpired Lease that is assumed under this Plan shall be made by Reorganized Debtor on the Initial Distribution Date. Notwithstanding the foregoing, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, the provision of adequate assurance of future performance, or any other matter pertaining to assumption, Reorganized Debtor shall make such cure payments and cure such other defaults and provide adequate assurance of future performance, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

### 7.3 **Bar to Rejection Claims**.

Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against Reorganized Debtor or the Assets unless a proof of Claim is filed with the Bankruptcy Court and served upon Debtor and his bankruptcy counsel, or Reorganized Debtor and his counsel, as the case may be, by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

7.4     **Rejection Claims**.

Any Rejection Claim not barred by section 8.3 above shall be classified as Class 11 (if such Rejection Claim is Allowed against Debtor), all subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed.

## ARTICLE VIII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

8.1.     **General**.

The Debtors propose to implement and consummate this Plan through the means contemplated by §§ 1123 and 1145(a) of the Bankruptcy Code.

8.2.     **Performance of Assumed Executory Contracts**.

From and after the Effective Date, in accordance with the terms of this Plan and the Confirmation Order, the Reorganized Debtor shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with Article 7 of this Plan.

8.3.     **Estate Assets**.

8.3.1    Management of Reorganized Debtors. The management of Reorganized Debtor will remain unaltered. John Hirsch shall continue in his capacity as Managing Member.

8.3.2    Consolidation. The Confirmation Order shall contain provisions for consolidation of the Debtors into a single Reorganized Debtor, which shall be Primal Materials, which shall continue operations as of the Effective Date. On or before the Effective Date, Primal Crushing shall execute such instruments of conveyance as are necessary and appropriate to transfer all assets of Primal Crushing to Primal Materials.

8.3.3    Revesting [§ 1191(a)].  On the Effective Date, if the Plan is confirmed

pursuant to § 1191(a), title to all assets, claims, Causes of Action, properties, and business operations of the Debtors and of the Estates shall vest and/or revest in the Reorganized Debtor. Thereafter, Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan. From and after the Effective Date, except as otherwise described in this Plan, Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein.

8.3.4   No Revesting [§ 1191(b)].  If the Plan is confirmed pursuant to § 1191(b), title to all assets, claims, Causes of Action, properties, and business operations of the Debtors and of the Estates shall remain property of its Estate until discharge of the Reorganized Debtors pursuant to § 1192.  From and after the Discharge Date title to all assets, claims, Causes of Action, properties, and business operations of the Debtors and of the Estates shall vest and/or revest in the Reorganized Debtor. Thereafter, the Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan.  From and after the Discharge Date, except as otherwise described in this Plan, the Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein.

8.3.5   Disbursing Agent. If the Plan is confirmed under § 1191(a) of the Bankruptcy Code the Reorganized Debtor shall serve as its own disbursing agent, without bond, for purposes of making transfers and payments under this Plan.  If the Plan is confirmed under § 1191(b) of the Bankruptcy Code the Reorganized Debtor shall likewise serve as its own disbursing agent, without bond, for purposes of making transfers and payments under this Plan.

8.3.6   Assertion of Estate Claims and Estate Defenses. The Reorganized Debtor shall retain and may enforce any claims in favor of the Debtors.  The Debtors are investigating certain causes of action, which shall remain property of the estate subject to administration in the bankruptcy court. Except as expressly set forth in the Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses, Avoidance Actions and Contribution Claims) belonging to the Debtors shall, upon the occurrence of the Effective Date, be retained by, received by and vested in the Reorganized Debtor for the benefit of the Debtors and the Debtors' estates.  Except as expressly set forth in the Plan, the rights of the Reorganized Debtor to commence, prosecute or settle such causes of action, respectively, shall be preserved notwithstanding the occurrence of the Effective Date.  **No Person may rely on the absence of a specific reference in the Plan to any cause of action against them as an indication that the Debtors or the Reorganized Debtor will not pursue any and all available causes of action (including all Estate Claims, Estate Defenses, Avoidance Actions and Contribution Claims) against them.**  The Debtors and their estates expressly reserve all rights to prosecute any and all causes of action (including all Estate Claims, Estate Defenses, Avoidance Actions and Contribution Claims) against any Person, except as otherwise provided in the Plan.  Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors expressly reserve all causes of action (including all

Estate Claims, Estate Defenses, Avoidance Actions and Contribution Claims) for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan.

8.4. **Settlement of Disputed Claims**.

From and after the Effective Date the Reorganized Debtor will have the power and authority to settle and compromise a disputed claim without court approval or compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

8.5. **Disposable Income Payments**.

In the event of Confirmation pursuant to § 1191(a), the Reorganized Debtor shall make monthly deposits of $25,000.00 to the Unsecured Creditor Pool from which Disposable Income Payments shall be made on a quarterly basis to the Holders of Allowed Class 5 and Class 12 Claims pro rata. The first of twelve (12) quarterly Disposable Income Payments shall be made on the first day of the third month following the Effective Date and every three months thereafter.

In the event of Confirmation pursuant to § 1191(b), the Unsecured Creditor Pool shall be funded by the Reorganized Debtor's Disposable Income which shall be calculated on each anniversary of the Effective Date for three years.

Reorganized Debtor shall provide the Subchapter V Trustee with sufficient information to allow the Subchapter V Trustee to determine the amount of each Disposable Income Payment. The information for the Subchapter V Trustee shall include, but not be limited to, the Reorganized Debtor's bank statements, invoices, payroll information, tax information, profit and loss statements and any other information reasonably requested by the Subchapter V Trustee to evaluate the Disposable Income Payment amount. The Reorganized Debtor shall provide this information on a semiannual basis. For services rendered post-confirmation by the Subchapter V Trustee, the Reorganized Debtor shall be authorized to pay those fees when presented to Reorganized Debtor without further order of the Court.

In the event of Confirmation pursuant to either § 1191(a) or (b), the Disposable Income Payment shall be distributed to Allowed Class 5 and Class 12 Creditors; however: (a) no Holder of a Class 5 or Class 12 Claim shall receive more than 100% of their Allowed Claim; (b) a Holder of both a Class 5 Claim and a Class 12 Claim which is based on the same underlying obligation, shall be entitled to only a single recovery from the Unsecured Creditor Pool); and (c) a Holder of a Class 5 or Class 12 Claim shall not be entitled to payment of interest on its Allowed Claim.

# ARTICLE IX.

# CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

9.1. **Conditions to Confirmation and Effectiveness of Plan**.

The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to Debtors; (b) the necessary Plan Documents, if any, have been executed and delivered, and (c) all other conditions specified by Debtors have been satisfied.

9.2.    **Notice of the Effective Date**.

Promptly upon the occurrence of the Effective Date, Reorganized Debtor shall cause to be filed with the Court and served on all Creditors and parties- in-interests, a notice of the Effective Date.

## ARTICLE X.

## PROVISIONS GOVERNING DISTRIBUTION

10.1.    **Means of Cash Payment**.

Payments of Cash to be made by the Reorganized Debtor or Subchapter V Trustee, as the case may be, pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

10.2.    **Delivery of Distributions**.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the Proofs of Claim filed by such holders (or at the last known addresses of such holders if no Proof of Claim is filed or if the Reorganized Debtor or Subchapter V Trustee, as the case may be, has been notified in writing of a change of address).  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtor or Subchapter V Trustee, as the case may be, is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  All claims for undeliverable distributions shall be made on or before the one-year anniversary of the distribution of the Creditor that was undeliverable.  After such date, the amount of such undeliverable distributions shall become an asset available to the Reorganized Debtor and the Creditors entitled to the undeliverable distributions shall have no further rights or entitlements to the undeliverable distributions.

10.3.    **Time Bar to Cash Payments**.

Checks issued by the Reorganized Debtor or Subchapter V Trustee, as the case may be, on account of Allowed Claims shall be null and void, if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor or Subchapter V Trustee, as the case may be, by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of the first anniversary of the Initial Distribution Date or ninety (90) days after the date of the issuance of such check.  After such date, all Claims in respect of

void checks shall be discharged and forever barred and the subject funds shall become an asset available to the Reorganized Debtor.

### 10.4.  **No Interest Unless Otherwise Provided**.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

### 10.5.  *De Minimis* **Distributions**.

The Reorganized Debtor or Subchapter V Trustee shall not be required to make a distribution of less than twenty-five dollar ($25.00) to any holder of an Allowed Claim. At the sole discretion of the Reorganized Debtor or Subchapter V Trustee, such undistributed amount may be retained by the Plan Agent until the aggregate amount to be distributed to any such holder of an Allowed Claim exceeds the twenty-five dollar ($25.00) minimum, or failing that, may be treated as Unclaimed Funds.

## ARTICLE XI.

## EFFECT OF THE CONFIRMATION OF THE PLAN

### 11.1.  **Compromise and Settlement**.

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against Debtors or their Estates arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with Debtors or their Estates. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of Debtors, their Estates, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for, and in complete satisfaction and release of, all Claims of any nature whatsoever against Debtors, their Estates, and the Assets. Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against Debtors and their affiliates, successors, assigns, the Estates or the Assets or Reorganized Debtor any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

### 11.2.  **Discharge**.

If Debtors' Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtors will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that Debtors will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If Debtors' Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtors will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

11.3. **PLAN INJUNCTION**.

THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST DEBTORS, THEIR ESTATES OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (i) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST DEBTORS, REORGANIZED DEBTOR OR THE ESTATES, WITH RESPECT TO ANY SUCH CLAIM ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM AGAINST THE ESTATES, DEBTORS OR REORGANIZED DEBTOR; (ii) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST DEBTORS, OR REORGANIZED DEBTOR, OR (iii) TAKING ANY ACTION IN RELATION TO DEBTORS, THEIR ESTATES, OR REORGANIZED DEBTOR, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

11.4 **Setoffs**.

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, Reorganized Debtor may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided,

however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant be entitled to setoff any Claim against any Claim, right, or Estate Claim of Debtors without the consent of Debtors or Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

11.5. **Recoupment.**

Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims be entitled to recoup any Claim against any Claim, right, account receivable, or Estate Claim of Debtors or Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to Debtors or Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim and a specific description of the basis for the recoupment, and (c) Debtors or Reorganized Debtor have provided a written response to such Claim, stating unequivocally that Debtors or Reorganized Debtor consent to the requested recoupment. Debtors and Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from Debtors or Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim shall be allowed.

11.6. **Turnover**.

On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable non-bankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in Reorganized Debtor.

11.7. **Automatic Stay**.

The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to Debtors, their Estates and all Assets. As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

## ARTICLE XII.

## RESOLUTION OF PENDING LITIGATION

12.1. **Disclosure of Pre-Petition Pending Litigation**.

The following lawsuits (collectively, "Pre-Petition Pending Litigation") were pending on the Petition Date:

Cause No. 12969-D styled *4-Way Haulers, LLC vs. Primal Crushing, LLC*, in the 350th Judicial District Court in and for Tarrant County, Texas.

Cause No. CC24908 styled *Warren Power & Machinery, Inc. vs. Primal Crushing, L.L.C. and Victor John Hirsch, Defendants* in the County Court at Law, Midland County, Texas.

Cause No. 2023V-051 styled *McCourt Equipment, Inc. vs Primal Crushing, LLC*, in the District Court, 155th Judicial District, Fayette County, Texas.

Cause No. 51462-A styled *Loftin Equipment Company vs. Primal Crushing, LLC and Victor John Hirsch, III,* in the District Court, 42nd Judicial District Court, Taylor County, Texas.

Cause No. C0678-22-H styled *Cody King and Melissa Lou King vs. Perales Pit, LLC, Primal Crushing, LLC and Trinity Energetics, LLC,* in the Judicial District Court, Hildalgo County, Texas.

Cause No. 025661 styled *E&B Enterprises, LLC, vs. Primal Crushing, LLC*, in the 259th Judicial District Court, Jones County, Texas.

Cause No. C220340C styled *Dossie Cribbs II and Becky Lou Cribbs vs. Primal Crushing, L.L.C.,* in the 340th Judicial District Court, Tom Green County, Texas.

Cause No. 11,8004 styled *Chris Ballard d/b/a Ballard Construction vs. Primal Crushing, L.L.C., a Texas limited liability company*, 46th Judicial District Court, Hardeman County, Texas.

## 12.2. **Disposition of Pre-Petition Pending Litigation**:

On or before the Effective Date of the Plan, all non-Debtor parties which are the plaintiff in Pre-Petition Pending Litigation shall execute and deliver to the Reorganized Debtor for filing, joint motions for dismissal, with prejudice, which shall provide for dismissal of such Pre-Petition Pending Litigation with prejudice to refilling of any and all claims and counter-claims which were pled and which could have been pled in such suits.

## ARTICLE XIII.

## CONSUMMATION OF THE PLAN AND JURISDICTION OF THE COURTS

### 13.1. **Retention of Jurisdiction.**

Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to this chapter 11 case and the Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     To hear and determine any and all Objections to or applications concerning the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense Claim;

(b)     To hear and determine any and all applications for payments of fees and expenses pursuant to the Plan to any Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under the Plan, and any and all objections thereto;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(d)     To hear and determine any and all adversary proceedings, applications, or contested matters, including Allowance of any Claim;

(e)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, including hearing all Valuation Motions, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

(f)     To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims as provided in the Plan;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)     To enforce injunction contained in section 15.2 of the Plan;

(k)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of the Plan and the transactions required or contemplated pursuant hereto;

(l)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(m)     To determine proceedings pursuant to section 505 of the Bankruptcy Code; and

(n)     To enter a final decree closing this chapter 11 case.

13.2.   **Abstention and Other Courts**.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this chapter 11 case, the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

13.3.   **Non-Material Modifications.**

The Debtors or Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Liquidating Trustee may undertake such nonmaterial modification pursuant to section 15.3 of the Plan insofar as it does not adversely change the treatment of the Claim of any Creditor or the interest of any interest holder who has not accepted in writing the modification.

13.4.   **Material Modifications**.

Modifications of this Plan may be proposed in writing by Debtors at any time before confirmation, provided that this Plan, as modified, meets the requirements of section 1193(a) of the Bankruptcy Code. This Plan may be modified at any time after confirmation provided the Plan, as modified, meets the requirements of section 1193(b) or 1193(c), as applicable.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

14.1.   **Severability**.

Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or interest or transaction, the Reorganized Debtor or Subchapter V Trustee may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

14.2.   **Oral Agreements; Modification of Plan; Oral Representations or Inducements.**

The terms of the Plan and Confirmation Order may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. The Plan may only be modified, amended or supplemented in writing signed by an authorized representative of the Debtors. Neither the Debtors nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in the Plan or the Confirmation Order or other order of the Bankruptcy Court.

14.3. **Waiver**.

The Reorganized Debtor and Subchapter V Trustee shall not be deemed to have waived any right, power or privilege pursuant to the Plan unless the waiver is in writing and signed by an authorized representative of the Reorganized Debtor or Subchapter V Trustee, as applicable. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor or Subchapter V Trustee, of any right pursuant to the Plan, including the provisions of the anti-waiver section of the Plan. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

14.4. **Construction**.

The Confirmation Order shall control over any inconsistent provision of the Plan.

14.5. **Notice.**

Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)    If to a Creditor, notice may be given as follows: (i) if the Creditor has filed no proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to address reflected in the proof of Claim.

(b)    If to the Subchapter V Trustee, at such address as may be hereafter designated;

(c)    If to the Reorganized Debtor, at such address as may be hereafter designated;

(d)    Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor or Subchapter V Trustee, as applicable, of its new address in accordance with the terms of this section.

(e)    Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

14.6. **Setoffs**.

The Reorganized Debtor or the Subchapter V Trustee, as applicable, may, but shall not be required to, set off against any Claim and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Reorganized Debtor or Subchapter V Trustee of any such claim that they may have against such holder.

14.7. **Duties to Creditors.**

No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtors or the Reorganized Debtors shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors' bankruptcy estates, the Reorganized Debtor for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtors' bankruptcy case, including all matters or actions in connection with or relating to the administration of the estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.

14.8. **Binding Effect**.

The Plan shall be binding upon, and shall inure to the benefit of the Reorganized Debtor, the holders of the Claims or Liens, the holders of interests, and their respective successors in interest and assigns.

14.9. **Governing Law, Interpretation**.

Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

14.10. **Filing of Additional Documents**.

On or before Substantial Consummation of the Plan, the Reorganized Debtor and Subchapter V Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.11. **Computation of Time**.

If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

14.12. **Release of Liens**.

Except as otherwise provided in the Plan or the Confirmation Order, all Liens against any of the Assets shall be deemed to be released, terminated and nullified.

14.13. **Rates**.

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

14.14. **Compliance with Tax Requirements**.

In connection with the Plan, Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

14.15. **Privileged Communications; Work Product**.

For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the Reorganized Debtor shall succeed to the interest of the Debtors and their Estates, to the extent provided by applicable law.

14.16. **No Interest**.

Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty or late charge is to be allowed on any Claim subsequent to the Petition Date.

14.17. **No Attorney's Fees**.

No attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtors, except as specified herein or as allowed by a prior order of the Bankruptcy Court.

14.18. **Substantial Consummation**.

If the Plan is confirmed pursuant to § 1191(a) of the Bankruptcy Code, substantial consummation shall be deemed to occur when the Reorganized Debtor makes initial distributions pursuant to the terms of the Plan.

14.19. **Notices and Distributions**.

On and after the Effective Date, all notices, requests and distributions to Claimants shall be sent to the last known address of: (1) the Claimant or its/his/her attorney of record as reflected

in the Claimant's proof of claim; or (2) if there is no such evidence of a last known address, to the last known address of the Claimant according to the books and records of Debtors. Any Claimant may designate another address for the purposes of this Section by providing the Reorganized Debtor written notice of such address, which notice will be effective upon receipt by Reorganized Debtor.

14.20. **Unclaimed Property**.

If any property distributed under the Plan by the Reorganized Debtor remains unclaimed for a period of two (2) years from the initial date of the attempted delivery such unclaimed property shall be forfeited by the Claimant and the unclaimed property and the right to receive it shall revert to and vest in the Reorganized Debtor free and clear of any claims, rights or interests. Reorganized Debtor, on the anniversary of the Effective date, shall file with the Bankruptcy Court a schedule that identifies the name and last-known address of all holders of unclaimed distributions.

14.21. **No Admissions**.

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Plan Proponents with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety, any classification of any Claim or Interest, or the valuation of any property.

## ARTICLE XV.

## DEFINITIONS OF TERMS

**Defined Terms**. Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form in this Plan that is not defined herein but that is used in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

15.1. **Administrative Expense** means any cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtors, any actual and necessary expenses of operating the business of the Debtors, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code.

15.2. **Allowed** means, when used with respect to a Claim, a Claim (i) to the extent it is not Contested; or (ii) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (A) as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or (B) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order. Allowed means, when used with respect to an Administrative

Expense of a Professional, an Administrative Expense approved by application to the Bankruptcy Court.

15.3.   **Assets** includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtors through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.

15.4.   **Avoidance Action** means a cause of action assertable by the Debtors against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

15.5.   **Ballot** means the form of ballot provided to holders of Claims or interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

15.6.   **Bankruptcy Code** means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code.

15.7.   **Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas, Abilene Division, or such other court having jurisdiction over all or any part of the Chapter 11 Cases.

15.8.   **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 case, including applicable local rules of the Bankruptcy Court.

15.9.   **Bar Date** means the last date established by the Bankruptcy Court for filing proofs of Claims in the Chapter 11 Case, provided, however, that if the Bankruptcy Court has ordered an extension of the time by which a particular Creditor or holder of an Equity Interest may file a proof of Claim or proof of interest, the date set with respect to such Creditor or holder of an Equity Interest shall be the Bar Date with respect to such Creditor or holder of an Equity Interest, but only as to such Creditor or holder of an Equity Interest.

15.10.   **Cash Collateral Order** means the *Order Authorizing Continued Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and Providing Adequate Protection and Granting Liens and Security Interests* [Docket No. 44] entered January 2, 2025, as may be extended from time to time.

15.11.   **Claim** means (a) a right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; and (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an

equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

15.12. **Claimant** means the holder of a Claim.

15.13. **Class** means all of the holders of Claims against the Debtors or of Interests in the Debtors having characteristics substantially similar to the other Claims or Interests which have been designated in Article III. of the Plan.

15.14. **Collateral** means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

15.15. **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

15.16. **Confirmation Date** means the date of entry of the Confirmation Order.

15.17. **Confirmation Hearing** means the hearing or hearings which will be held before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider Confirmation of the Plan.

15.18. **Confirmation Order** means a Final Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

15.19. **Creditor** means a "creditor" as defined in section 101(10) of the Bankruptcy Code.

15.20. **Debtors** means Primal Materials, LLC, (sometimes "Primal Materials") and Primal Crushing, LLC (sometimes "Primal Crushing"), the Debtors in these bankruptcy cases.

15.21. **Disposable Income** shall have the meaning provided for such term in section 1191(d) of the Bankruptcy Code.

15.22. **Disposable Income Payments** means the periodic payments of Disposable Income made from the Unsecured Creditor Pool.

15.23. **Disputed Claims Reserve** means the portion of Distributable Cash which will be reserved for holders of Contested Claims.

15.24. **Distributable Cash** means the aggregate amount of Cash on Hand.

15.25. **Distribution** or **Distributions** shall refer to and include any payment or other distribution of property pursuant to this Plan.

15.26. **Effective Date** means the Business Day that is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed prior to such date or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay.

15.27.  **Estate** means the Estate created by section 541 of the Bankruptcy Code upon the commencement of these bankruptcy cases.

15.28.  **Estate Claims** shall include all claims and causes of action held by the Debtors' Estates, including without limitation all Avoidance Actions and Contribution Claims.

15.29.  **Estate Defenses** shall refer to all defenses, affirmative defenses, counterclaims or offsets by the Debtors' Estates against any Person, including but not limited to any Creditors.

15.30.  **Executory Contract** shall refer to any executory contract or unexpired lease which is subject to section 365 of the Bankruptcy Code.

15.31.  **Final Order** means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

15.32.  **General Unsecured Claim** shall mean a Claim which is not a Secured Claim, is not an Administrative Expense and is not entitled to priority of distribution pursuant to section 507 of the Bankruptcy Code, and includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

15.33.  **Initial Distribution Date** means the first Business Day that is thirty (30) days following the Effective Date.

15.34.  **Insider** means any person defined by the Bankruptcy Code as an insider of the Debtor.

15.35.  **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset, including any right of offset asserted against any Asset.

15.36.  **Person** means any individual, any type of incorporated or registered business or nonprofit entity, including any corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint stock company, joint venture, estate, trust unincorporated organization, governmental entity or unit, or any political subdivision thereof or other entity.

15.37.  **Petition Date** means December 12, 2024.

15.38.  **Plan** means this chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

15.39.  **Priority Claim** means a Claim other than an Administrative Claim to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

15.40.   **Priority Non-Tax Claim** means a Claim entitled to priority pursuant to sections 507(a)(1) - 507(a)(7) of the Bankruptcy Code.

15.41.   **Priority Tax Claim** means a Claim of a governmental unit of a kind specified in section 507(a)(8) of the Bankruptcy Code.

15.42.   **Pro Rata Share** shall mean, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

15.43.   **Professional** means those persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

15.44.   **Projected Disposable Income** means the income Debtor has projected as income available to fund the Plan for Confirmation Hearing purposes and are reflected in the Plan Documents.

15.45.   **Rejection Claim** means a claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any executory contract or unexpired lease.

15.46.   **Reorganized Debtor** means the consolidated Debtors after Confirmation Date starting on the Effective Date of this Plan.

15.47.   **Schedules** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be subsequently amended.

15.48.   **Secured Claim** means (a) a Claim secured by a Lien against an Asset, to the extent such Lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets which the Bankruptcy Court finds are valid security for such Claim and(b) any right of offset asserted against the Debtors or any Asset.

15.49.   **Subordinated Claim** means (a) any Claim for indemnity, contribution, or reimbursement that is not Allowed on or before the Confirmation Date, (b) any Claim for penalties or punitive damages, and (c) any Claim subordinated under Section 510 of the Bankruptcy Code.

15.50.   **Secured Creditor** shall mean the holder of a Secured Claim.

15.51.   **Subchapter V Trustee** shall mean Areya Holder Aurzada.

15.52. **Subchapter V Trustee Fees** shall mean those fees paid or to be paid to the Subchapter V Trustee pursuant to section 330 of the Bankruptcy Code.

15.53. **Unclaimed Funds** means any Cash, distribution, or any other property of the Liquidation Entity or Reorganized Debtor, as the case may be, unclaimed for a period of one (1) year after the applicable distribution date as set forth in the Plan.

15.54. **Unsecured Claim** means a Claim of a Creditor that is not a Secured Claim or an Administrative or other Priority Claim.

15.55 **Unsecured Creditor Pool** means the pool of funds established and funded by the Reorganized Debtor from which Disposable Income Payments to Holders of Allowed Class 6 and Class 13 Claims shall be made on a pro rata basis for the life of the Plan.

Dated this the 12th day of March 2025.

Respectfully submitted,

ROCHELLE MCCULLOUGH, LLP
300 Throckmorton Street, Suite 520
Fort Worth, Texas 76102
Telephone: 817.347.5260
Facsimile: 817.347.5269
http://www.romclaw.com

By:  ____/s/ Joseph F. Postnikoff_____
      Joseph F. Postnikoff
      State Bar No. 16168320
      Email: jpostnikoff@romclaw.com

COUNSEL FOR DEBTORS IN POSSESSION

# ADDENDUM A

# Liquidation Analysis

# ADDENDUM A
## Consolidated Liquidation Analysis[1]
## Primal Materials, LLC/Primal Crushing, LLC

| Asset Description | Amount Secured Claim(s) | Chapter 7 Liquidation Value | Totals |
|---|---|---|---|
| **REAL PROPERTY** | | | |
| Quarry Lease (Primal Materials) | | $ 0.00 | |
| Office Lease (Primal Materials & Primal Crushing) | | 0.00 | |
| **NET EQUITY IN REAL PROPERTY** | | **$ 0.00** | **$ 0.00** |
| **PERSONAL PROPERTY[2]** | | | |
| Cash and Deposits (Primal Materials) | | $ 56,000.00 | |
| Accounts Receivable (Primal Materials & Primal Crushing) | | 216,000.00 | |
| Inventory of Crushed Rock (Primal Materials) | | 200,000.00 | |
| Office Furniture & Equipment (Primal Materials & Primal Crushing) | | 2,550.00 | |
| Domain Names | | 2,000.00 | |
| Kleeman Crusher # 14 | | 200,000.00 | |
| Komatsu Financial | $320,000.00 | | |
| Kleeman 130 Impact Crusher # 51 | | 225,000.00 | |
| Komatsu Financial | 340,000.00 | | |
| Machinery and Equipment | | 330,000.00 | |
| Fundthrough USA | 169,000.00 | | |
| ALJR | 761,000.00 | | |

---

[1] As of January 1, 2025.
[2] All Personal property of Primal Materials and Primal Crushing is encumbered by liens of Komatsu Financial, Fundthrough USA and ALJR.

**NET EQUITY IN PERSONAL PROPERTY**   $1,590,000.00               $1,231,550.00          $_____ 0.00

**TOTAL EQUITY IN REAL AND PERSONAL PROPERTY**                                          $      0.00


**ESTIMATE OF RECOVERY TO UNSECURED CREDITORS IN CHAPTER 7 LIQUIDATION = $ 0.00**

# ADDENDUM B

# Plan Projections

**COMPANY NAME:** Primal Materials, LLC  
**MANAGER NAME:** John Hirsch  
**COMPLETED BY:** John Hirsch  
**DATES REPRESENTED:** 8-1-24 to 10-31-24  
**DATE OF LAST UPDATE:** Thursday, March 13, 2025

| Month | April-25 | May-25 | June-25 | July-25 | August-25 | September-25 | October 2025 to September 2026 | October 2026 to September 2027 | October 2027 to September 2028 | 4/1/2025 - 3/31/2029 |
|---|---|---|---|---|---|---|---|---|---|---|
| **BEGINNING BALANCE \| CASH ON HAND** | $350,000.00 | $696,240.00 | $1,007,375.00 | $1,349,210.00 | $1,705,708.11 | $2,123,654.22 | $2,142,156.22 | $4,422,920.13 | $6,136,939.45 | $6,136,939.45 |
| **(+) Accounts Receivable** | | | | | | | | | | |
| Net50/Open Accounts | $925,000.00 | $879,000.00 | $917,500.00 | $935,000.00 | $925,000.00 | $897,000.00 | $7,857,000.00 | $6,500,000.00 | $6,000,000.00 | $25,835,500.00 |
| Sales tax | $7,856.00 | $6,980.00 | $37,537.50 | $20,800.00 | $39,187.00 | $34,000.00 | $340,000.00 | $298,000.00 | $134,000.00 | $918,360.50 |
| **TOTAL CASH RECEIPTS** | $932,856.00 | $885,980.00 | $955,037.50 | $955,800.00 | $964,187.00 | $931,000.00 | $8,197,000.00 | $6,798,000.00 | $6,134,000.00 | $26,753,860.50 |
| **(-) CASH PAYMENTS** | | | | | | | | | | |
| **(-) General Overhead** | | | | | | | | | | |
| PAYROLL | $29,000.00 | $18,800.00 | $18,800.00 | $30,000.00 | $30,000.00 | $30,000.00 | $360,000.00 | $360,000.00 | $360,000.00 | $1,236,600.00 |
| PAYROLL TAXES | $3,190.00 | $3,190.00 | $3,190.00 | $3,300.00 | $3,300.00 | $3,300.00 | $39,600.00 | $39,600.00 | $39,600.00 | $138,270.00 |
| Fuel | $56,565.00 | $56,565.00 | $56,565.00 | $56,565.00 | $56,565.00 | $56,565.00 | $678,780.00 | $630,000.00 | $320,000.00 | $1,968,170.00 |
| Repair/Maintenance | $12,800.00 | $12,800.00 | $12,800.00 | $12,800.00 | $12,800.00 | $12,800.00 | $153,600.00 | $140,000.00 | $75,000.00 | $445,400.00 |
| Freight Provider for Project | $225,000.00 | $225,000.00 | $225,000.00 | | | | | | | $675,000.00 |
| Move machine to project | $7,800.00 | | | | | | | | | $7,800.00 |
| Royalties | $60,000.00 | $60,000.00 | $60,000.00 | $34,000.00 | $41,000.00 | $27,500.00 | $1,081,081.00 | $878,378.00 | $840,000.00 | $3,081,959.00 |
| Insurance Premiums | $1,800.00 | $1,800.00 | $1,800.00 | | | | $35,000.00 | $35,000.00 | $35,000.00 | $110,400.00 |
| Detonation Expense | $60,000.00 | $60,000.00 | $60,000.00 | $226,000.00 | $223,000.00 | $190,000.00 | $1,655,172.41 | $1,514,000.00 | $1,410,000.00 | $5,398,172.41 |
| Contract Labor | $3,400.00 | $3,400.00 | $3,400.00 | $8,000.00 | $8,000.00 | $8,000.00 | $70,000.00 | $70,000.00 | $70,000.00 | $244,200.00 |
| Toilet Cleaning | $90.00 | $90.00 | $90.00 | $180.00 | $180.00 | $180.00 | $2,160.00 | $2,160.00 | $2,160.00 | $7,290.00 |
| Accounting | $800.00 | $800.00 | $800.00 | $1,500.00 | $1,500.00 | $1,500.00 | $18,000.00 | $18,000.00 | $18,000.00 | $60,000.00 |
| Beth Nottingham | $450.00 | $450.00 | $450.00 | $450.00 | | | | | | $1,800.00 |
| Rental Loader (flex for demand) | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $360,000.00 |
| Rental Loader (flex for demand) | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $120,000.00 | $120,000.00 | $120,000.00 | $360,000.00 |
| Rental Crusher (flex for demand) | $45,000.00 | $45,000.00 | $45,000.00 | $44,000.00 | $44,000.00 | $44,000.00 | $528,000.00 | $528,000.00 | $528,000.00 | $1,851,000.00 |
| Rental Loader (one loader) | $8,366.00 | $15,470.00 | $15,470.00 | $15,470.00 | $15,470.00 | $15,470.00 | | | | $85,715.00 |
| Subchapter V Trustee | $1,000.00 | $1,000.00 | $1,000.00 | | | | | | | $3,000.00 |
| Sales tax | $7,856.00 | $6,980.00 | $37,537.50 | $20,800.00 | $39,187.00 | $34,000.00 | $340,000.00 | $298,000.00 | $134,000.00 | $918,360.50 |
| | | | | | | | | | | |
| Administrative Expense Claims | | | $50,000.00 | | | | | | | $50,000.00 |
| IRS | | | | $450.48 | $450.48 | $450.48 | $5,405.76 | $4,054.32 | | $14,217.28 |
| ALLR | | | | $13,705.49 | $13,705.49 | $13,705.49 | $164,465.88 | $164,465.88 | $45,728.19 | $544,514.11 |
| FundThrough USA adequate protection pmt | | | | $5,080.92 | $5,080.92 | $5,080.92 | $60,971.04 | $60,971.04 | | $187,413.03 |
| Komatsu Crusher | | | | $32,000.00 | $32,000.00 | $32,000.00 | $384,000.00 | | | $576,000.00 |
| | | | | | | | | | | |
| General unsecured creditors | | | | $25,000.00 | | | $100,000.00 | | $75,000.00 | $300,000.00 |
| **TOTAL GENERAL OVERHEAD** | $586,616.00 | $574,845.00 | $613,202.50 | $599,301.89 | $546,238.89 | $494,551.89 | $5,916,236.09 | $5,083,980.68 | $4,241,008.39 | $18,655,981.33 |
| | | | | | | | | | | |
| **TOTAL OTHER EXPENSES** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | |
| **TOTAL CASH PAYMENTS** | $586,616.00 | $574,845.00 | $613,202.50 | $599,301.89 | $546,238.89 | $494,551.89 | $5,916,236.09 | $5,083,980.68 | $4,241,008.39 | $18,655,981.33 |
| | | | | | | | | | | |
| **NET CASH CHANGE (CASH RECEIPTS – CASH PAYMENTS)** | $346,240.00 | $311,135.00 | $341,835.00 | $356,498.11 | $417,948.11 | $436,448.11 | $2,280,763.91 | $1,714,019.32 | $1,892,991.61 | $8,097,879.17 |
| **ENDING CASH POSITION (CASH ON HAND + CASH RECEIPTS – CASH PAYMENTS)** | $696,240.00 | $1,007,375.00 | $1,349,210.00 | $1,705,708.11 | $2,123,654.22 | $2,142,156.22 | $4,422,920.13 | $6,136,939.45 | $8,029,931.06 | $8,097,879.17 |